IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER SOMERVILLE,         )
                                )
            Plaintiff,           )
                                )
                                )    Civ. 12-192 Erie
                                )
MICHAEL J. ASTRUE,              )
COMMISSIONER OF SOCIAL          )
SECURITY,                       )
                                )
            Defendant.           )

## OPINION

### I. Introduction

This case is before us on appeal from a final decision by the defendant, Commissioner of Social Security ("the Commissioner"), denying Christopher Somerville's claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. The parties have submitted cross-motions for summary judgment. For the reasons stated below, we will deny the Plaintiff's motion and grant the Defendant's motion.

### II. Procedural History

Christopher Somerville applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f on December 9, 2008, alleging a disability due to borderline intellectual functioning and back pain, with an alleged onset date of December 31, 2004. Plaintiff's claim was initially denied on February 20, 2009. A timely request for a hearing was filed by Plaintiff on May 11, 2009. A hearing was held before an Administrative Law Judge ("ALJ") on August 24, 2010, at which Plaintiff was represented by counsel and testified. R. at 40-80. Plaintiff's mother and a vocational expert also testified at the hearing. R. 80-89; 89-94.

By decision dated October 6, 2010, the ALJ determined that Plaintiff is not disabled under § 1614(a)(3)(A) of the SSA. R. at 20-31. The ALJ found that Plaintiff has the following

severe impairments: obesity; borderline intellectual functioning; intermittent explosive disorder; and chronic low back pain. R. 22. The ALJ further found that Plaintiff does not have a severe impairment in the form of sleep apnea, noting that he responds well to use of a CPAP machine, a sleep study test was normal, and there is no other record evidence regarding sleep problems after November 2009. R. 22.

The ALJ also determined that none of the impairments or combination of impairments meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 22-24.

The ALJ determined that Plaintiff has the residual functional capacity to perform light work, except that he needs to alternate between sitting and standing as needed; he cannot perform more than occasional postural activities (such as climbing, balancing, stooping, kneeling, crouching, and crawling); he cannot perform work involving close proximity to occupational hazards; he must avoid temperature extremes and airborne irritants; he is limited to performing no more than simple, routine repetitive tasks in a low stress work environment not involving any complex decision-making, high-volume productivity requirements, or very infrequent unexpected changes in the workplace; he cannot perform work where he would interact with the public or have more than occasional interaction with coworkers and supervisors; he cannot perform work involving more than the most rudimentary reading ability; and he cannot perform work involving any math calculations. R. 24-29.

In making this determination the ALJ made the following credibility determination:

> I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. 25.

Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded that he is able to "make a successful adjustment to other work that exists in significant numbers in the national economy, and therefore he is "not disabled." R. 31.

Plaintiff filed a timely review of the ALJ's determination, which was denied by the Appeals Council on June 22, 2012. R. 1-6. Having exhausted his administrative remedies, Plaintiff filed the instant action seeking judicial review of the final decision of the Commissioner of Social Security denying his SSI application.

### III. Standard of Review

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. See 42 U.S.C. § 405(g)(2012). This court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. See id. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder. See id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry). So long as the ALJ's decision is supported by substantial evidence and decided according to the correct legal standards, the decision will not be reversed. Id. To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. 5 U.S.C. § 706(1)(F)(2012).

## IV. Discussion

Under the SSA, the term "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ...

42 U.S.C. § 423. A person is unable to engage in substantial activity when he:

> is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A).

In determining whether a claimant is disabled under the SSA, a sequential evaluation process must be applied. 20 C.F.R. § 416.920(a). See McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows. At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. 20 C.F.R. 20 C.F.R. § 416.920(b). At step two, the Commissioner must determine whether the claimant has a severe impairment or a combination of impairments that is severe. 20 C.F.R. § 416.920(c). If the Commissioner determines that the claimant has a severe impairment, he must then determine whether that impairment meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, Subpart P, Appendix. 1. 20 C.F.R. § 416.920(d).

The ALJ must also determine the claimant's residual functional capacity; that is, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 416.920(e). If the claimant does not have an impairment which meets or equals the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments prevent him from performing his past relevant work. 20 C.F.R. § 416.920(f). If so, the Commissioner must determine, at step five,

4

whether the claimant can perform other work which exists in the national economy, considering his residual functional capacity and age, education and work experience. 20 C.F.R. § 416.920(g). See also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

Plaintiff argues that the ALJ failed to properly consider the medical evidence of record and erred by rejecting the opinions of his treating physician and treating psychiatrist and instead improperly relying on his own interpretation of the medical evidence. Plaintiff further argues that the ALJ failed to identify substantial medical evidence that was contrary to the treating doctors' opinions, and improperly relied on opinions of examining and non-examining State Agency medical consultants. As a result, the ALJ's residual functional capacity was in error as was the ALJ's hypothetical to the vocational expert. Thus, Plaintiff argues that substantial evidence does not support the ALJ's determination that Plaintiff has the residual functional capacity to perform light work.

In response to Plaintiff's arguments, Defendant argues that the ALJ properly evaluated the medical evidence and medical source opinions. Finally, Defendant argues that substantial evidence supports the ALJ's conclusion that Plaintiff has the residual functional capacity to perform light work.

## A. Whether the ALJ Properly Evaluated the Medical Evidence

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence and improperly rejected the opinions of his treating psychiatrist, Asha Prabhu, M.D., and treating physician, Sreedhar Rama, M.D., both of which supported a finding of disability.

As the finder of fact, the ALJ is required to review, properly consider and weigh all of the medical records provided concerning the claimant's claims of disability. Fargnoli, 247 F.3d at 42 (citing Dobrowolsky v. Califano, 606 F.2d 403, 406-07 (3d Cir.1979)). "In doing so, an ALJ may not make speculative inferences from medical reports." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Smith v. Califano, 637 F.2d 968, 972 (3d Cir.1981)). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians'

reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (quoting Plummer, 186 F.3d at 429) (citations omitted). While an ALJ may reject a treating physician's assessment, he may do so "'outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Id. (quoting Plummer, 186 F.3d at 429) (citations omitted); 42 U.S.C.A. § 423(d)(1)(A). Indeed, the ALJ may not substitute his own opinions for the opinions of an examining physician. Plummer, 186 F.3d at 422 (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir.1985)).

When the medical evidence provided by a treating physician or physician conflicts with other medical evidence of record "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Id. (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)). Moreover, the ALJ must consider all the evidence and give some reason for dismissing the evidence he chooses to reject. Id. (citing Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir.1983)). 42 U.S.C.A. § 423(d)(1)(A). Finally, "[i]f a treating physician's opinion is rejected, the ALJ must consider such factors as the length of the treatment relationship, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, any specialization of the opining physician and other factors the plaintiff raises, in determining how to weigh the physician's opinion." Sanchez v. Barnhart, 388 F.Supp. 2d 405, 412 (D.Del.2005) (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

### 1. Dr. Prabhu – Mental Impairments

Dr. Prhabu completed a Medical Source Statement Regarding the Nature and Severity of an Individual's Mental Impairments dated July 20, 2010. R. 326-328. For the question, "Is the ability to understand, remember, and carry out instructions affected by the impairment?" Dr. Prabhu indicated that Plaintiff's impairment would result in him having "extreme" restrictions as to his ability to understand and remember short, simple instructions; to carry our short, simple

instructions; to understand and remember detailed instructions; to carry our detailed instructions; and to make judgments on simple work-related decisions. R. 326. Dr. Prabhu also indicated that Plaintiff's "ability to respond appropriately to supervision, co-workers, and work pressures in a work setting" was affected by his impairment. R. 327. In this regard Dr. Prabhu indicated that Plaintiff would have "marked" restrictions with regard to interacting appropriately with the public, supervisors, or co-workers. R. 327. Dr. Prabhu also indicated a "marked" restriction in his ability to respond appropriately to work pressures in a usual work setting, and an "extreme" restriction in his ability to respond appropriately to changes in a routine work setting. R. 327. Dr. Prabhu's Medical Source Statement assessment supports a finding of disability.

The ALJ rejected the findings of Dr. Prabhu to the extent they are not consistent with the record evidence; specifically, that Dr. Prabhu's findings of marked to extreme limitations are not supported by, and are diametrically opposed to, her own progress notes. R. 28, 23. The ALJ stated that "there is no foundation in the evidence of record that provides a basis for the limitations that Dr. Prabhu assessed that the claimant had in [her] July 20, 2010 report." R. 28. The ALJ explained as follows:

> The contemporaneous progress notes from the Counseling Services Center clearly shows that the claimant has the mental capacity to perform work within the parameters of his residual functional capacity as found herein (and, thus, that there is no reasonable basis for the findings of Dr. Prabhu, as of July 20, 2010, that the claimant has numerous marked to extreme limitations of functioning.

R. 27. The ALJ further stated that the fact that "numerous progress notes from Dr. Prabhu consistently show that the claimant was stable (and Dr. Prabhu never noted any specific limitation in the contemporaneous, progress notes) substantially undermines the validity of Dr. Prabhu's findings in [her] July 20, 1010 mental health, medical source statement". R. 27.

We find no error with the determination by the ALJ to reject the findings of Dr. Prabhu. Dr. Prabhu's findings of marked and extreme limitations are not in accord with the Counseling Services Center's progress notes. The ALJ supported his rejection of Dr. Prabhu's findings with a thorough review of the medical evidence. R. 25, 26-28. Significantly, the ALJ carefully

reviewed Plaintiff's progress notes from Counseling Services Center, where he received treatment for his mental impairments. These notes spanned the time period from May 2007 through August 2010. R. 259-280, 309-328. The ALJ thoroughly addressed and explained his reason that the progress notes do not support Dr. Prabhu's ultimate findings as to Plaintiff's limitations.

In addition, the ALJ relied on the Consultative Examination Report of Barbara L. Edwards, M.A., in which she noted that Plaintiff had a full scale IQ of 86, no problems performing activities of daily living, little problem maintaining social functioning, good concentration, persistence, and pace, and no episodes of decompensation. R. 26 (citing Consultative Examination Report, May 17, 2001, r. 249-252).

The ALJ also relied on, and credited, the findings of Psychologist Phyllis Bentrel, Psy.D. R. 28 (citing the Psychiatric Review Technique completed by Dr. Bentrel, Feb. 20, 2009, r. 281-294). Dr. Bentrel found that Plaintiff had no limitations in activities of daily living, mild limitations in maintaining social functioning, moderate limitations in maintaining concentration, persistence, and pace, and no episodes of decompensation. R. 291.

We disagree with the Plaintiff's argument that the ALJ improperly substituted his own interpretation of Dr. Prabhu's treatment notes for Dr. Prabhu's opinion. The ALJ did not render his own medical analysis or opinion, but instead the ALJ carefully reviewed the medical record evidence that showed that Plaintiff's progress notes do not support the limitations as stated by Dr. Prabhu. The ALJ set forth in detail what the progress notes contained, which was essentially that Plaintiff is doing well on his medications, is "stable", and that he had little to no mood swings, racing thoughts, or concentration problems. It was incumbent on Dr. Prabhu to explain why her findings were so opposed to her own contemporaneous progress notes over a three year period. We agree with the government that the treatment notes indicate stability, treatment success, denial of symptoms, and positive observations during the sessions. G. Br. 21. We also note that Plaintiff does not attempt to argue why the treatment notes do in fact support Dr. Prabhu's findings. Finally, although Plaintiff argues that the ALJ should have contacted Dr.

Prabhu for additional information; there was no need here for additional information as the ALJ already had Dr. Prabhu's progress notes, which were the basis for her opinion. In other words, the medical evidence of record was not inadequate for the ALJ to make a disability determination.

### 2. Dr. Rama – Physical Impairments

Dr. Rama completed a Medical Source Statement Regarding the Nature and Severity of an Individual's Physical Impairments dated August 4, 2010. R. 330-332. Dr. Rama indicated that Plaintiff could "occasionally" lift and/or carry 10 pounds and "frequently" lift and/or carry less than 10 pounds. R. 330. He found that Plaintiff's ability to stand and/or walk was restricted to less than 2 hours in an 8-hour workday, specifically Dr. Rama found him to be limited to one-half hour of standing and/or walking in an 8-hour workday. R. 330. Dr. Rama further indicated that Plaintiff could sit no more than one hour, and must alternate between sitting and standing to relieve pain or discomfort every 45 minutes; that Plaintiff was limited in his lower extremities in his ability to push and/or pull; that he could "occasionally" perform balancing, kneeling, and stooping, but could "never" perform climbing, crouching or crawling. R. 331.

Dr. Rama also indicated that Plaintiff could "occasionally engage in reaching and gross manipulation; and that had environmental limitations regarding temperature extremes, dust, vibration, humidly/wetness, hazards, fumes, odors, chemicals and gases. R. 331-332. Finally, Dr. Rama found that Plaintiff was likely to call off work 3 out of 5 days; would be medically unable to complete a full work day 3 out of 5 days; and would require 4 to 8 unscheduled breaks in excess of 5 to 10 minutes in a workday. R. 332. Dr. Rama's Medical Source Statement assessment supports a finding of disability.

The ALJ did not credit the findings of Dr. Rama to the extent that the limitations he set forth would prohibit Plaintiff from performing sustained work activity in accord with the ALJ's residual functional capacity finding. R. 29. The ALJ noted that Dr. Rama's contemporaneous progress notes are consistent with the ALJ's residual functional capacity finding, but in conflict with Dr. Rama's medical source statement conclusions. R. 29. Again, the ALJ carefully

9

reviewed the record medical evidence and explained his reasoning for not crediting Dr. Rama's conclusions. The ALJ gave substantial weight to findings of consultative examining physician John J. Kalata, D.O. R. 28. We find no error with the ALJ's decision to not credit Dr. Rama's opinion. A review of the medical records show that Dr. Rama's conclusions, insofar as they are inconsistent with the ALJ's residual functional capacity findings, are in conflict with Dr. Rama's own treating notes and in opposition to Dr. Kalata's evaluation of Plaintiff.

### B.     The Accuracy of the ALJ's Hypothetical Question

Plaintiff argues that the ALJ's hypothetical questions to the vocational expert did not accurately reflect Plaintiff's impairments because it failed to account for the limitations set forth by his treating doctors. Because we find that the ALJ properly evaluated the medical evidence from Plaintiff's treating doctors we find no error with the ALJ's hypothetical question. We further note that he ALJ's residual functional capacity finding was detailed and credited Plaintiff with numerous limitations, some of which were not credited by the agency examiners.

### C.     Substantial Evidence

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer, 186 F.3d at 427. We find that the Commissioner's decision is based on substantial evidence.

## V. Conclusion

For the foregoing reasons, and based upon our review of the record as a whole, we hold that the decision of the Commissioner that Mr. Somerville was not disabled is supported by substantial evidence and, accordingly, an appropriate order will be entered granting the Commissioner's motion for summary judgment and denying Mr. Somerville's motion for summary judgment.

August 5, 2013
Date

Maurice B. Cohill, Jr.
Senior United States District Court Judge